**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

---

**NAVIGATORS INSURANCE COMPANY,**

               **Plaintiff,**

    **v.**                                      **Case No. _____**

**BTS ENTERPRISES, INC., KP
ENGINEERING, LP, KP ENGINEERING, LLC
f/k/a KOCH PARTNERS, LLC, BRANDON
STEELE, WILLIAM PRESTON, DOUG
SCHNITTKER, and KYLE MCCOY,**

               **Defendants.**

---

## COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION

1.    Plaintiff Navigators Insurance Company ("Navigators") files this complaint against Defendants BTS Enterprises, Inc. ("BTS"), KP Engineering, LP ("KPE"), KP Engineering, LLC f/k/a Koch Partners, LLC ("Koch"), Brandon Steele ("Steele"), William Preston ("Preston"), Doug Schnittker ("Schnittker"), and Kyle McCoy ("McCoy") (collectively "Defendants"), and states as follows:

### INTRODUCTION

2.    This declaratory judgment action concerns an insurance coverage dispute arising under a liability policy issued by Navigators to BTS (hereafter the "Policy"), which provides Directors & Officers Liability coverage.  The Policy was the first issued by Navigators to BTS, and is effective from March 31, 2019 to March 31, 2020.  A true copy of the Policy, the terms of which are incorporated herein by reference, is attached as "**Exhibit 1**."

3.    Subject to all terms, conditions, limitations, and exclusions, the Policy extends coverage to BTS, its Subsidiaries, and the Directors and Officers of either.  Upon information

and belief, KPE and Koch are Subsidiaries of BTS, and Steele, Preston, Schnittker, and McCoy are Directors and/or Officers of KPE.

4.      Defendants sought coverage for the following civil matters:

a.      *Hancock Mechanical, LLC d/b/a Hancock Mechanical Welding & Fabrication v. KP Engineering, LP, Targa Pipeline Mid-Continent WestTex LLC, KP Engineering, LLC f/k/a Koch Partners, LLC, and Brandon Steele*, Case No. CV54856, in the 238th District Court of Midland County, Texas (filed August 24, 2018, amended July 25, 2019) (the "Hancock Action");

b.      *Saulsbury Industries, Inc. v. KP Engineering, LP*, an American Arbitration Association proceeding (filed August 14, 2019) (the "Saulsbury Matter");

c.      *Smith & Loveless, Inc. v. Brandon Steele, William Preston, Doug Schnittker, and Kyle McCoy*, Case No. 2019-61414, in the 129th District Court of Harris County, Texas (filed August 29, 2019) (the "S&L Action").

5.      The Hancock Action, Saulsbury Matter, and S&L Action (the "Prior Claims") were either pending or arise from Claims in existence at the time the Policy was issued.  Upon information and belief, each of the Prior Claims was known to each of the Defendants prior to the Policy's issuance.  However, the Prior Claims were not disclosed to Navigators in BTS's application.  Similarly, in a warranty letter submitted with the application, Defendants represented that they were not aware of any pending claims against anyone which may fall within the scope of coverage afforded.

6.      Accordingly, as set forth in greater detail herein, the Policy is void *ab initio* and Navigators has no duty to defend or indemnify any of the Defendants in connection with the Prior Claims.

## JURISDICTION AND VENUE

7.      This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, for the purpose of determining an actual controversy between the parties, as more fully detailed below.

4840719v.1

8.      This action is currently ripe for adjudication, as an actual controversy exists between the parties regarding coverage under the Policy for the Hancock Action, the Saulsbury Matter, and the S&L Action.

9.      The jurisdiction of this Court is premised upon 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), because BTS maintains its principal place of business in this District and certain events or alleged omissions giving rise to this action occurred in this District, including the issuance of the subject Policy.

## PARTIES

11.     Plaintiff, Navigators Insurance Company ("Navigators"), is a New York corporation with its principal place of business located in New York, New York.

12.     Defendant, BTS Enterprises, Inc. ("BTS") is a Texas Corporation doing business in Texas, with its principal place of business located in Tyler, Texas.

13.     Defendant, KPE Engineering, LP ("KPE") is a Texas Limited Partnership doing business in Texas, with principal offices in Tyler, Texas.[1]   Upon information and belief, no partner of KPE is incorporated in or resides in the State of New York.

14.     Defendant, KP Engineering, LLC f/k/a Koch Partners, LLC ("Koch"), the general partner of KPE, is a Delaware Limited Liability Company doing business in Texas, with its

[1] On August 23, 2019, KPE initiated bankruptcy proceedings under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Case No. 19-34698.  Navigators has simultaneously filed a motion in the bankruptcy court seeking relief from the automatic stay to allow this action to proceed against KPE in this Court.

4840719v.1

principal offices in Tyler, Texas.[2]   Upon information and belief, no member of Koch is incorporated in or resides in the State of New York.

15.     Defendant, Brandon Steele ("Steele") is a Texas resident, is a director and/or officer of BTS, KPE, and Koch, and may be served with process at his place of business, 5555 Old Jacksonville Hwy., Tyler, Texas 75703.

16.     Defendant, William Preston ("Preston") is a Texas resident, is a director and/or officer of KPE, and may be served with process at his place of business, 11757 Katy Hwy., Ste. 1200, Houston, Texas 77079.

17.     Defendant, Doug Schnittker ("Schnittker") is a Texas resident, is a director and/or officer of KPE, and may be served with process at his place of business, 5555 Old Jacksonville Hwy., Tyler, Texas 75703.

18.     Defendant, Kyle McCoy ("McCoy") is a Texas resident, is a director and/or officer of KPE, and may be served with process at his place of business, 5555 Old Jacksonville Hwy., Tyler, Texas 75703.

## FACTUAL BACKGROUND

19.     While this insurance coverage matter specifically concerns coverage under the Policy for the Hancock Action, the Saulsbury Matter, and the S&L Action, it arises out of "Claims" against KPE (as defined in the Policy) that predate the issuance of the Policy but were not disclosed by BTS, KPE's parent company, in its application for insurance or in a warranty letter provided with the application.

---

[2] On August 23, 2019, Koch initiated bankruptcy proceedings under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Case No. 19-34699.  On August 26, 2019, the bankruptcy court ordered that the matter be jointly administered under Case No. 19-34698.  Navigators has simultaneously filed a motion in the bankruptcy court seeking relief from the automatic stay to allow this case to proceed against Koch in this Court.

I.      **The Hancock Action**

20.     The Hancock Action was commenced on August 24, 2018, when Hancock Mechanical, LLC d/b/a Hancock Mechanical Welding & Fabrication ("Hancock") filed suit against KPE and Targa Pipeline Mid-Continent WestTex LLC ("Targa Pipeline") in the District Court for Midland County, Texas.  A true and accurate copy of the Original Petition filed in the Hancock Action (the "Hancock Original Petition") is attached as "**Exhibit 2**."

21.     The Hancock Original Petition alleged that in August 2017, Targa Pipeline contracted with KPE to construct the "Johnson Project," a cryogenic gas processing and compression unit with various pipelines in Reagan County and Midland County, Texas.  (Ex. 2, ¶ 8).

22.     In March, April, and May 2018, KPE allegedly entered into three purchase order contracts with Hancock to furnish labor, materials, and equipment for the mechanical portion of the Johnson Project.  (*Id.*, ¶ 9).

23.     Hancock allegedly commenced work on the Johnson Project in March of 2018 and was paid $695,143.30 by KPE for the first five weeks.  (*Id.*, ¶ 10).

24.     However, on May 1, 2018, KPE allegedly stopped paying Hancock and KPE now purportedly owes $2,548,589.09 for services and materials furnished through June 26, 2018.  (*Id.*).

25.     According to the Hancock Original Petition and publicly available documents, Hancock provided notice to KPE and Targa Pipeline of its claim for the unpaid amounts via regular and certified mail on June 13, 2018, June 26, 2018, and July 16, 2018.  (*Id.*, ¶ 11; Ex. 3, ¶ 12).

26.     On July 12, 2018, Hancock filed a lien against KPE and Targa Pipeline in Reagan County, Texas, purportedly based on a belief that the subject property was located there. Hancock amended that lien on July 27, 2018.  (Ex. 2, ¶ 11, Ex. 3, ¶ 13).

27.     On August 14, 2018, Hancock filed a lien against KPE and Targa Pipeline in Midland County, Texas, where the property is located.  (*Id.*).  A true and accurate copy of the Lien Affidavit and Claim in Midland County, Texas (the "Hancock Lien") is attached as "**Exhibit 3**."

28.     The Hancock Action was commenced ten days later, with the filing of an Original Petition, which asserts that "[b]ecause neither KPE nor Targa [Pipeline] has committed to pay Hancock for its services, Hancock has no choice but to bring this suit against KPE and Targa [Pipeline] to be paid for its work."  (Ex. 2, ¶ 2).

29.     The Hancock Original Petition includes six causes of action against KPE for breach of contract, suit on sworn account, quantum meruit, restitution, breach of fiduciary duty/trust fund violations, and Prompt Pay Act violations, and two causes of action against Targa Pipeline for foreclosure of the mineral lien and foreclosure of the mechanics and materialman's lien.  (*Id.*, ¶¶ 12-21).

30.     The Hancock Original Petition sought an award of $2,548,589.09 in actual damages, interest as a penalty, and exemplary damages against KPE, and reasonable attorneys' fees and expenses, pre- and post-judgment interest, and court costs against KPE and Targa Pipeline.  In the alternative, Hancock sought foreclosure and sale of Targa Pipeline's interest in the property in satisfaction of the debt.  (*Id.*, ¶ 23).

31.     On July 25, 2019, Hancock filed the operative First Amended Petition (the "Hancock Amended Petition"), adding Koch and Steele as defendants.  A true and accurate copy of the Hancock Amended Petition is attached as "**Exhibit 4**."

32.     The Hancock Amended Petition asserts that "[b]ecause neither KPE nor Targa [Pipeline] has paid Hancock for its services, and Hancock has reason to believe that Brandon Steele, owner and general partner of KPE, improperly diverted funds Targa [Pipeline] paid KPE for the benefit of Hancock to other ventures, Hancock has no choice but to bring this suit against KPE, Steele, as general partner of KPE and in his individual capacity, Koch, another general partner of KPE, and Targa [Pipeline] to be paid for its work."  (Ex. 4, ¶ 2).

33.     Thus, like the Original Petition, the Hancock Amended Petition arises out of KPE's failure to pay Hancock under the three purchase order contracts.  (*See* Ex. 4, ¶¶ 1-2, 10-18).

34.     The Hancock Amended Petition includes eleven causes of action, six against KPE, Koch, and Steele for breach of contract, suit on sworn account, breach of fiduciary duty/trust fund violations, Prompt Pay Act violations, negligence, and fraud, three against Targa Pipeline for foreclosure of the mineral lien, foreclosure of the mechanics and materialman's lien, and fund-trapping violations, and two against KPE, Koch, Steele, and Targa Pipeline for quantum meruit and unjust enrichment/restitution.  (*Id.*, ¶¶ 19-32).

35.     Hancock seeks an award of $2,548,589.09 in actual damages, interest as a penalty, and exemplary damages against KPE, Steele, and Koch, and reasonable attorneys' fees and expenses, pre- and post-judgment interest, and court costs against all defendants.  In the alternative, Hancock seeks foreclosure and sale of Targa Pipeline's interest in the property in

4840719v.1

satisfaction of the debt and a constructive trust on any property or interest which Steele purchased with funds fraudulently diverted from the Johnson Project subcontractors.  (*Id.*, ¶ 34).

## II.     The Saulsbury Matter

36.     On August 14, 2019, Saulsbury filed a Demand for Arbitration (the "Saulsbury Demand") against KPE with the American Arbitration Association ("AAA").   A true and accurate copy of the Saulsbury Demand is attached as "**Exhibit 5**."

37.     Saulsbury's Demand seeks $22,043,435.20 in damages allegedly owed by KPE for the construction and installation of a condensate crude oil splitter, flare and LPG storage area, and tank farm for Targa Terminals, LLC ("Targa Terminals"), in Channelview, Texas (the "Channelview Project").  (Exhibit A to Ex. 5, p. 1).

38.     According to Saulsbury, Targa Terminals had initially contracted with KPE on or about April 15, 2016 under an Agreement for Engineering, Procurement and Construction (the "Prime Contract").  (*Id.*).

39.     KPE allegedly entered into a Subcontract Agreement with Saulsbury on May 2, 2016 (the "Subcontract").  (*Id.*).

40.     The original amount allegedly due to Saulsbury under the Subcontract was $42,919,111.00.  (*Id.*).

41.     Saulsbury alleges that KPE repeatedly breached and defaulted on its obligations under the Subcontract, "including but not limited to, by failing to timely compensate Saulsbury for the materials, labor, and other services it provided to KPE on the [Channelview] Project." (*Id.*, p. 2).

42.     Saulsbury asserts that, from the very early stages of its work on the Channelview Project, Saulsbury had concerns regarding KPE's administration and management of the Channelview Project.  (*Id.*).

43.     Specifically, Saulsbury claims that the Channelview Project design suffered from deficiencies and that it soon realized that "KPE's ability to address those design deficiencies in a timely and orderly manner was lacking."  (*Id.*).

44.     Saulsbury also alleges that:

KPE failed to adhere to the contract documents by, among other things, not providing timely access to the [Channelview] Project for at least four months past the original mobilization date, not providing timely access to areas within the project after mobilization, expanding Saulsbury's scope of work, constructively accelerating Saulsbury's work, failing to timely review and approve change orders, and by failing to coordinate subcontractors' work.

(*Id.*).

45.     Saulsbury further asserts that "KPE quickly developed a pattern of not paying Saulsbury's invoices in a timely manner and, ultimately, not paying the invoices at all."  (*Id.*).

46.     Nonetheless, Saulsbury purportedly proceeded with its work on the Channelview Project, "following KPE's directive to accelerate and continuing to perform its work pursuant to the terms of the Subcontract."  (*Id.*).

47.     Saulsbury claims that, despite these efforts, it has been "woefully undercompensated" and that "Saulsbury brings this action to recover all amounts KPE owes Saulsbury."  (*Id.*).

48.     Saulsbury filed three mechanic's and materialman's liens against KPE and Targa Terminals in Harris County, Texas, Lien No. RP-2018-513386, filed November 11, 2018, Lien No. RP-2018-557103, filed December 13, 2018, and Lien No. RP-2018-557106, filed December

13, 2018, (collectively, the "Saulsbury Liens"). True and accurate copies of the Saulsbury Liens are attached hereto as "**Exhibit 6**," "**Exhibit 7**," and "**Exhibit 8**," respectively.

49.     According to the affidavits accompanying the Saulsbury Liens, KPE was provided notice of each on the date of its filing.  (Ex. 6, ¶ 10, Ex. 7, ¶ 10, Ex. 8, ¶ 10).

50.     Navigators presently has no information regarding what may have transpired between Saulsbury and KPE in the months that followed the filing of the Saulsbury Liens.

51.     However, Saulsbury's counsel sent correspondence to KPE's counsel on August 5, 2019, requesting that KPE agree to have AAA administer the dispute as a Large, Complex Construction Case in Houston, Texas, pursuant to the current AAA Construction Industry Arbitration Rules, and to have a three-arbitrator panel decide the dispute.  (Exhibit A.2. to Ex. 5, p. 1).

52.     On August 14, 2019, Saulsbury filed the Saulsbury Demand, asserting claims against KPE for breach of contract, quantum meruit/unjust enrichment, Prompt Pay Act violations, and breach of fiduciary duties and breach of trust.  (Exhibit A to Ex. 5, pp. 2-3).

53.     The Saulsbury Demand seeks "damages totaling approximately $22,043,435.20, exclusive of interest, attorneys' fees and costs, and any applicable statutory penalties," which includes:

**$2,514,354.00** of unpaid Original Contract Amounts;

**$2,389,240.39** of unpaid approved and pending change orders, for none of which Saulsbury ever received a rejection;

**$1,088,854.44** in contested change orders;

**$4,875,539.65** in unpaid and withheld retainage; and

**$11,175,446.72** in delay, impact, and extra work costs Saulsbury incurred due to numerous and systemic failures by KPE to properly manage the Channelview Project and coordinate construction activities, among other inefficiencies and

impediments to an orderly completion of the Channelview Project, none of which were due to any fault of Saulsbury.

(*Id.*, p. 4).

### III.    The S&L Action

54.    The S&L Action was commenced on August 29, 2019, when Smith & Loveless, Inc. ("S&L") filed suit against Steele, Preston, Schnittker, and McCoy (collectively the "S&L Defendants") in the District Court for Harris County, Texas.  A true and accurate copy of the Original Petition filed in the S&L Action (the "S&L Petition") is attached as "**Exhibit 9**."

55.    The S&L Petition alleges that each S&L Defendant is personally liable under the Texas Construction Trust Fund Statute, TEX. PROP. CODE § 162.001, *et seq.* (the "Trust Fund Statute"), for $521,525.50 owed by KPE to S&L, as a subcontractor on a project for Targa Terminals.  (Ex. 9).

56.    On or about April 15, 2016, KPE purportedly contracted with Targa Terminals for the construction and installation of a crude splitter unit, storage area, and tank farm in Channelview, Texas (the aforementioned "Channelview Project").  (*Id.*, ¶ 9).

57.    In connection with the Channelview Project, on or about July 15, 2016, KPE allegedly issued a purchase order to S&L (the "Purchase Order") for a clarifier, filter, and related equipment to be provided or erected for the Channelview Project.  The original contract price was $1,959,565.00.  (*Id.*, ¶ 10).

58.    In September 2016, KPE allegedly requested that $642,000.00 for the field erection portion of the work be deleted from the Purchase Order and that a separate subcontract for same work be entered into for the same amount.  (*Id.*, ¶ 11).

11

59.     Accordingly, in December 2016, the parties allegedly entered into a separate subcontract for the field erection work for the contract price of $642,000.00 (the "Field Erection Subcontract").  (*Id.*, ¶ 12).

60.     The parties later allegedly executed additional additive change orders for the Purchase Order, which brought the total price for both the Purchase Order and Field Erection Subcontract to $2,021,548.00.  (*Id.*, ¶ 13).

61.     The S&L Petition alleges that, although S&L performed all labor and furnished all materials required, KPE failed to pay $521,525.50 due to S&L under the agreements.  (*Id.*, ¶ 14).

62.     According to publicly available documents, S&L filed a mechanic's and materialman's lien in Harris County, Lien No. RP-2019-75559, on February 26, 2019, (the aforementioned "S&L Lien").  A true and accurate copy of the S&L Lien is attached as "**Exhibit 10**."

63.     According to the S&L Lien, KPE received notice of S&L's claim for payment on February 12, 2019.  (Ex. 10).

64.     Navigators presently has no information regarding what may have transpired between S&L and KPE after the filing of the S&L Lien until the filing of the S&L Petition on August 29, 2019.

65.     The S&L Petition alleges, upon information and belief, that KPE has received payments from Targa Terminals, but has not paid the subcontractors who performed work on the Channelview Project, including S&L.  (Ex. 9, ¶ 15).

66.     S&L claims that these funds are "trust funds" under the Trust Fund Statute and that S&L is the beneficiary of those funds.  (*Id.*).

67.     S&L further asserts, upon information and belief, that "Defendants, as officers and/or directors of KPE, had control or direction of those trust funds, and thus are considered 'trustees' under the [Trust Fund Statute] and personally liable for the misapplication of said funds." (*Id.*, ¶ 16).

68.     The S&L Petition alleges that "[t]hese trust funds were intentionally, knowingly or with intent to defraud, retained, used, disbursed or otherwise diverted by KPE and its directors, officers and/or agents, without first fully paying all current or past due obligations owed to S&L." (*Id.*, ¶ 18).

69.     Accordingly, S&L asserts that "[a]s KPE's directors, officers and/or agents, Steele, Preston, Schnittker and McCoy are personally liable for KPE's violation of the [Trust Fund Statute]." (*Id.*, ¶ 19).

70.     The S&L Petition asserts one cause of action for "Construction Trust Fund Violation" and seeks $521,525.50 in actual damages, pre-judgment and post-judgment interest, reasonable attorney's fees, court costs, and "all other relief to which S&L may show itself to be justly entitled." (*Id.*, §§ V, XI).

## IV.     BTS's Request for Insurance

71.     In early 2019, with the Hancock Action pending and after Defendants received notice of the Saulsbury Liens and the S&L Lien, BTS, the parent company of KPE and Koch, sought insurance from Navigators on behalf of itself and its subsidiaries, including KPE and Koch.

72.     BTS submitted an "Arch Renewal Application" (the "Application") to Navigators in connection with its request for coverage.  A true copy of the Application, the terms of which are incorporated herein by reference, is attached as "**Exhibit 11**."

4840719v.1

73.     BTS also submitted a letter titled "No Claims Declaration" (the "Warranty Letter") to Navigators.  A true copy of the Warranty Letter, the terms of which are incorporated herein by reference, is attached as "**Exhibit 12**."

74.     The Application and Warranty Letter were both signed by Steele, as CEO of BTS. (Ex. 11, p. 5; Ex. 12).  Upon information and belief, Steele is also the managing member of Koch, the General Partner of KPE.

75.     The Application, dated April 1, 2019, includes Question 3.(B.)(3.), titled "DIRECTORS, OFFICERS, & ORGANIZATION LIABILITY INFORMATION," which asks the following question:

> Has the Applicant experienced within the past year, or does it expect to experience in the next year, any of the following events:
>
> 1.  Public offering of securities?
> 2.  Private offering of securities?
> 3.  Breach or violation of any debt covenant, loan agreement, or other material contractual obligation?

(Ex. 11, p. 2).

76.     Next to the foregoing question, the Application provides boxes for the applicant's answer marked "Yes" and "No."  Steele responded to Question 3.(B.)(3.) by checking the box marked "No."  (*Id.*).

77.     The term "Applicant" is defined in the Application to include, in relevant part, "the company to be named in the policy and any subsidiary."  (Ex. 11, p. 1).

78.     The Application is incorporated into and made a part of the Policy by Endorsement No. 4 and Sections II.L. and VIII.F. of the Policy's General Terms and Conditions ("GT&C").  (Ex. 1, GT&C §§ II.L., VIII.F., Endorsement No. 4).

79.     The Warranty Letter, dated April 1, 2019, states:

As respects the Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability, Employed Lawyers and Crime insurance policy offerings proposed by Navigators, I am unaware of any pending claims against anyone for whom this insurance is intended which may fall within the scope of coverage afforded by any similar insurance presently or previously in effect or currently proposed.

**IT IS UNDERSTOOD AND AGREED THAT IF ANY SUCH CLAIMS EXIST THEN THOSE CLAIMS ARE EXCLUDED FROM THE PROPOSED INSURANCE.**

**SUCH MATTERS MAY ALSO RESULT IN THE NAVIGATORS OFFERINGS BEING ALTERED OR RESCINDED.**

(Ex 12 (emphasis in original)).

80.     The Warranty Letter is incorporated into and made a part of the Policy by Sections II.L. and VIII.F. of the Policy's General Terms and Conditions.  (Ex. 1, GT&C §§ II.L., VIII.F.).

81.     Upon information and belief, Steele and the other Defendants were aware of the Hancock Action, the Saulsbury Liens, and the S&L Lien at the time of BTS's request to Navigators for insurance coverage.

82.     BTS's response to Question 3 on the Application and BTS's representations in the Warranty Letter, both of which were obviously material to the risk insured against, were false when made.

83.     In reliance on the Application and the Warranty Letter, Navigators issued SmartPolicy No. CH19DOLZ01RPHIV to BTS for the Policy Period of March 31, 2019 to March 31, 2020 (the aforementioned "Policy").  (Ex. 1, Declarations, Item 2).

84.     The Policy was issued to BTS in the State of Texas at BTS's address in Tyler, Texas.  (*Id.*, Declarations, Item 1).

**V.      KPE, Koch, and Steele's Request for Coverage for the Hancock Action**

85.      By letter dated July 31, 2019, Walter J. Andrews of Hunton Andrews Kurth LLP ("Hunton"), on behalf of KPE, Koch, and Steele (the "Hancock Defendants"), provided notice to Navigators of the Hancock Amended Petition.  A true and accurate copy of Hunton's July 31, 2019 letter is attached as "**Exhibit 13**."

86.      On August 5, 2019, Navigators had a telephone conversation with Hunton, in which Navigators raised several issues regarding coverage under the Policy and invited the Insureds to submit additional information.

87.      By letter dated August 19, 2019, Hunton, on behalf of the Hancock Defendants, submitted additional information as discussed on the August 5, 2019 call.  A true and accurate copy of Hunton's August 19, 2019 letter is attached as "**Exhibit 14**."

88.      On September 20, 2019, Navigators issued a letter to Hunton, as counsel for the Hancock Defendants, advising that coverage is unavailable under the Policy for the Hancock Action because, among other reasons, it is a Claim first made prior to the Policy Period, and therefore coverage is not triggered under the Policy's D&O Coverage.  A true and accurate copy of Navigators' September 20, 2019 letter is attached as "**Exhibit 15**."

89.      Navigators' September 20, 2019 letter also provided notice pursuant to Section 705.005 of the Texas Code of Navigators' defense based on the Insured's misrepresentations in the Application and the Warranty Letter.  (Ex. 15, p. 8).

90.      By letter dated October 1, 2019, Hunton, on behalf of the Hancock Defendants, disputed Navigators' coverage position.  A true and accurate copy of Hunton's October 1, 2019 letter is attached as "**Exhibit 16**."

4840719v.1

## VI.     KPE's Request for Coverage for the Saulsbury Matter

91.     By letter dated August 16, 2019, Hunton, on behalf of KPE, provided notice to Navigators of the Saulsbury Demand.  A true and accurate copy of Hunton's August 16, 2019 letter is attached as "**Exhibit 17**."

92.     On September 20, 2019, Navigators issued a letter to Hunton, as counsel for KPE, advising that coverage is unavailable under the Policy for the Saulsbury Matter because, among other reasons, coverage is precluded by the contract exclusion in the D&O Coverage and because the S&L Action is a Claim first made prior to the Policy Period, and therefore coverage is not triggered under the Policy's D&O Coverage.   A true and accurate copy of Navigators' September 20, 2019 letter is attached as "**Exhibit 18**."

93.     Navigators' September 20, 2019 letter also provided notice pursuant to Section 705.005 of the Texas Code of Navigators' defense based on the Insured's misrepresentations in the Application and the Warranty Letter.  (Ex. 18, p. 7).

## VII.    Preston, Schnittker, and McCoy's Request for Coverage for the S&L Action

94.     By letter dated September 12, 2019, Hunton, as counsel for Steele, Preston, Schnittker, and McCoy (the "S&L Defendants"), provided notice to Navigators of the S&L Petition.  A true and accurate copy of Hunton's September 12, 2019 letter is attached as "**Exhibit 19**."

95.     On October 7, 2019, Navigators issued a letter to Hunton, as counsel for the S&L Defendants, advising that coverage is unavailable under the Policy for the S&L Action because, among other reasons, it is a Claim first made prior to the Policy Period, and therefore coverage is not triggered under the Policy's D&O Coverage.    A true and accurate copy of Navigators' October 7, 2019 letter is attached as "**Exhibit 20**."

4840719v.1

96.     Notwithstanding, Navigators agreed to furnish a defense to the S&L Defendants in connection with the S&L Action and is currently defending them.  (*See* Ex. 20, pp. 1, 8).

97.     Navigators' October 7, 2019 letter also provided notice pursuant to Section 705.005 of the Texas Code of Navigators' defense based on the Insured's misrepresentations in the Application and the Warranty Letter.  (Ex. 20, p. 8).

## VIII.   KPE and Koch's Bankruptcy

98.     By letter dated August 27, 2019, Navigators received notice that, on August 23, 2019, KPE and Koch filed a Voluntary Petition for Bankruptcy under Chapter 11 in the Southern District of Texas.  A true and accurate copy of the August 27, 2019 letter is attached as "**Exhibit 21**."[3]

## POLICY TERMS

99.     As is potentially relevant here, the Policy includes a Directors and Officers Liability Coverage Part ("D&O Coverage"), which is subject to a $5,000,000 limit of liability and a $25,000 self-insured retention.  (Ex. 1, Declarations, Items 5-6).

100.    Subject to all applicable terms, conditions, limitations, and exclusions, the Insuring Agreements at Section I. of the Policy's D&O Coverage Section provides, in relevant part:

> A.      The Insurer will pay to or on behalf of the **Insured Persons** all **Loss** which the **Insured Persons** are legally obligated to pay as a result of a **Claim** first made against the **Insured Persons** during the **Policy Period** … for a **Wrongful Act** by the **Insured Persons**, except for **Loss** which the **Company** actually pays as advancement or indemnification.

> B.      The Insurer will pay to or on behalf of the **Company** all **Loss** which the **Insured Persons** are legally obligated to pay as a result of a **Claim** first made against the **Insured Persons** during the **Policy Period** or the Discovery Period, if purchased, for a **Wrongful Act** by the **Insured**

---

[3] As previously noted, Navigators is seeking an order from the bankruptcy court allowing this action to proceed against KPE and Koch in this Court.

> **Persons**, but only to the extent the **Company** is required or permitted by law to pay such **Loss** to or on behalf of the **Insured Persons** as advancement or indemnification.
>
> C.    … [T]he Insurer will pay to or on behalf of the **Company** all **Loss** which the **Company** is legally obligated to pay as a result of a **Claim** first made against it during the **Policy Period** or the Discovery Period, if purchased, for a **Wrongful Act** by the **Company**.

(*Id.*, D&O Coverage, § I.).

101.    "**Insured Persons**" is defined at Section II.E. of the D&O Coverage, in relevant part, as "any past, present or future duly elected or appointed director, officer or member of the board of managers or management committee of the **Company**."  (*Id.*, D&O Coverage, § II.E., Endorsement No. 5).

102.    "**Company**" is defined at Section II.B of the Policy's General Terms and Conditions, as amended by Endorsement No. 5, Section II.C of the General Terms and Conditions, and Item 1 of the Declarations, as BTS and "any **Subsidiary**."  (*Id.*, D&O Coverage, § II.B.).

103.    "**Subsidiary**" is defined at Section II.N. of the Policy's General Terms and Conditions, in relevant part, as "any entity during any time in which [BTS] owns, directly or indirectly, more than fifty percent (50%) of the outstanding securities or interests representing the present right to vote for the election or appointment of such entity's directors, managers, or persons occupying an equivalent position."  (*Id.*, GT&C, § II.N.).

104.    "**Claim**" is defined at Section II.A. of the General Terms and Conditions, as amended by Endorsement No. 5, in relevant part, as "a written demand for monetary or non-monetary relief made against any **Insured**" and "a civil … or arbitration proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading." (*Id.*, GT&C, § II.A., Endorsement 5).

105.    Section VII.B. of the General Terms and Conditions further provides:

> All **Claims** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** will be considered a single **Claim**, and will be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage.

(*Id.*, GT&C, § VII.B.).

106.    "**Wrongful Act**" is defined at Section II.J. of the D&O Coverage, in relevant part, as "any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by any **Insured Person** in his or her capacity as such with the **Company**" and "any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the **Company**." (*Id.*, D&O Coverage, § II.J.).

107.    "**Related Wrongful Acts**" is defined at Section II.M. of the General Terms and Conditions as "**Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, event or decision." (*Id.*, GT&C, § II.M.).

108.    Section III.A.1. of the D&O Coverage, as amended by Endorsement No. 5, in relevant part, precludes coverage for:

> **Loss**, including **Costs of Defense**, in connection with any **Claim** made against the **Insured** … brought about or contributed to by:
>
> a.    the gaining by any **Insured** of any profit, advantage or remuneration to which such **Insured** was not legally entitled; or
>
> b.    the deliberately fraudulent or criminal acts of any **Insured**;
>
> provided, however: (1) this exclusion shall only apply if it is finally adjudicated such conduct in fact occurred; [and] (ii) this exclusion shall not apply to coverage provided under Insuring Agreement B; …
>
> For the purpose of this exclusion, the phrase "finally adjudicated" or "final adjudication" shall only apply if it is finally adjudicated, or there is a final adjudication, in the underling action that such conduct in fact occurred, and that such adjudication is non-appealable.

(*Id.*, D&O Coverage, § III.A.1., Endorsement No. 5).

109.    Section III.A.2. of the D&O Coverage precludes coverage for:

> **Loss**, including **Costs of Defense**, in connection with any **Claim** made against the **Insured** . . . based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given under any other policy of which this Coverage Part if a renewal or replacement.

(*Id.*, D&O Coverage, § III.A.2.).

110.    Section III.B.1. of the D&O Coverage precludes coverage for the Company under

Insuring Agreement C for:

> **Loss**, including **Costs of Defense**, in connection with any **Claim** made against the **Company** . . . based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any liability under any contract or agreement; provided, however, that this exclusion will not apply to the extent the **Company** would have been liable in the absence of such contract or agreement.

(*Id.*, D&O Coverage, § III.B.1.).

111.    The definition of "**Loss**" at Section II.J. of the Policy's General Terms and

Conditions excludes "criminal or civil fines or penalties imposed by law, … or any matter which

may be deemed uninsurable under the law pursuant to which this Policy shall be construed."

(*Id.*, GT&C, § II.J.).

112.    Section VIII.F. of the Policy's General Terms and Conditions, as amended by

Endorsement No. 5, provides, in relevant part:

> It is agreed by the **Insureds** that the particulars and statements contained in the **Proposal Form** and any information provided therewith (which shall be on file with the Insurer and be deemed attached hereto as if physically attached hereto) are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy.  It is further agreed by the **Insureds** that the statements in the **Proposal Forms** or in any information provided therewith are their representations, and that this Policy is issued in reliance upon the truth of such representations; provided, in the event that the **Proposal Form** contains misrepresentations made with the

actual intent to deceive, or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by Underwriters of this Policy, this Policy shall be void and have no effect whatsoever with respect to those **Insureds** who made or had knowledge of such misrepresentations.

(*Id.*, GT&C § VIII.F., Endorsement No. 5).

113.    "**Proposal Form**" is defined at Section II.L. of the General Terms and Conditions, in relevant part, as "the application or proposal form attached to and forming part of this Policy, together with any materials submitted therewith."  (Ex. 1, GT&C § II.L.).

114.    Endorsement No. 4 of the Policy states that "[a]ny application scheduled below is hereby made a part of the Policy and shall operate as if it is a Navigators Management Company application, even if such application was completed for another insurer. ["]Arch Renewal Application Signed and Dated April 1, 2019["].  (*Id.*, Endorsement No. 4).

## FIRST CAUSE OF ACTION
(Rescission at Law – All Defendants)

115.    Navigators repeats, restates and reiterates each and every allegation set forth in paragraphs 1 through 114 of this Complaint as if fully set forth herein.

116.    In connection with its request for insurance from Navigators and prior to the issuance of the Policy, Steele, on behalf of BTS and all Insureds, submitted an Application for insurance to Navigators.  The Application is incorporated into and, therefore, is a part of the Policy.

117.    Question   3.(B.)(3.),   DIRECTORS,   OFFICERS,   &   ORGANIZATION LIABILITY INFORMATION, on the Application includes the following question: "Has the Applicant experienced within the past year, or does it expect to experience in the next year, any of the following events . . . [b]reach or violation of any debt covenant, loan agreement, or other material contractual obligation."

118.    Steele, on behalf of BTS, responded to the question by checking the box marked "No," indicating that within the past year, it has not experienced a breach or violation of "any . . . material contractual obligation.

119.    The Hancock Action, Saulsbury Liens, and S&L Lien (the aforementioned "Prior Claims"), in fact, each assert a breach of a material contractual obligation by KPE.

120.    At no time after the submission of the Application and prior to the issuance of the Policy did BTS advise there had been any changes in BTS's submission to Navigators.

121.    Additionally, Steele, on behalf of BTS and all Insureds, submitted the Warranty Letter to Navigators.  The Warranty Letter is incorporated into and, therefore, is a part of the Policy.

122.    The Warranty Letter states that Steele and the Insureds were "unaware of any pending claims against anyone for whom this insurance is intended which may fall within the scope of coverage afforded by any similar insurance presently or previously in effect or currently proposed."

123.    Upon information and belief, Steele and each of the Defendants were aware of the Prior Claims at the time of the Application and Warranty Letter and therefore, the aforementioned statements contained in the Application and Warranty Letter were materially and knowingly false.

124.    Upon information and belief, the misrepresentations contained in the Application and Warranty Letter were made with an intent to induce Navigators to issue the Policy or to issue it on materially better terms and, therefore, with an intent to deceive on the part of Steele and the other Insureds.

125.     The misrepresentations contained in the Application and the Warranty Letter specifically concerned circumstances that were or could be the basis for a claim under the proposed insurance policy.  Indeed, the Claims presently at issue are a direct result of those circumstances.  Those misrepresentations were, therefore, plainly material to the risk assumed by Navigators when it issued the Policy.

126.     Navigators had no knowledge of the Prior Claims before the Policy was issued. Accordingly, Navigators believed the statements contained in the application to be true and reasonably relied on them in issuing the Policy.

127.     For the foregoing reasons, the Application and the Warranty Letter contained representations on the part of Steele and the other Defendants, which were demonstrably false when made, upon which Navigators reasonably relied, which were made with the intent to deceive, and which were material to the risk insured against under the Policy.

128.     Navigators is, therefore, entitled to entry of a judgment declaring the Policy void *ab initio* and rescinding the Policy in its entirety.

129.     Accordingly, Navigators has tendered all premiums paid by or on behalf of the Defendants to BTS.

## SECOND CAUSE OF ACTION
(Equitable Rescission – All Defendants)

130.     Navigators repeats, restates and reiterates each and every allegation set forth in paragraphs 1 through 129 of this Complaint as if fully set forth herein.

131.     As set forth above, Steele responded falsely, on behalf of BTS and the other Insureds, to Question 3.(B.)(3.) on the Application by checking the box marked "No," indicating that the Applicant had not experienced within the past year any breach or violation of a material contractual obligation.

24

132.     As set forth above, Steele falsely stated, on behalf of BTS and the other Insureds, that he was unaware of any pending claims in the Warranty Letter.

133.     Upon information and belief, Steele and each of the Defendants were aware of the Prior Claims at the time of the Application and Warranty Letter and therefore, the statements contained in the Application and Warranty Letter were materially and knowingly false.

134.     At no time after the submission of the Application and the Warranty Letter and prior to the issuance of the Policy did any of the Defendants advise there had been any changes in BTS's submission to Navigators.

135.     Upon information and belief, the misrepresentations by Steele contained in the Application and the Warranty Letter were knowingly and intentionally made to Navigators, for the purpose of inducing Navigators to issue the Policy or to do so on materially better terms than would be available had the Prior Claims been disclosed.

136.     Navigators had no knowledge of the Prior Claims, or the alleged circumstances or matters which led to them, prior to issuing the Policy.   Accordingly, Navigators reasonably believed the statements contained in the application to be true.

137.     Navigators issued the Policy in reliance on the truth of the representations made by Steele, on behalf of BTS and the other Insureds, in the Application and Warranty Letter.  Had Navigators known of the Prior Claims and attendant circumstances prior to the issuance of the Policy, it would not have issued it or would have issued it on different terms, including a higher premium and/or with specific exclusions.

138.     For the foregoing reasons, the misrepresentations contained in the Application and Warranty Letter submitted by or on behalf of BTS concern a material fact, were made by BTS for the purpose of inducing Navigators to act, and were known by BTS to be false.

139.     For its part, Navigators was ignorant of the falsity of the statements contained in the Application and Warranty Letter, reasonably believed these statements to be true, and acted in reliance on these statements to its detriment.

140.     Navigators is, therefore, entitled to entry of a judgment declaring the Policy void *ab initio* and rescinding the Policy in its entirety.

141.     Accordingly, Navigators has tendered all premiums paid by or on behalf of the Defendants to BTS.

### THIRD CAUSE OF ACTION
(Misrepresentation – All Defendants)

142.     Navigators repeats, restates and reiterates each and every allegation set forth in paragraphs 1 through 141 of this Complaint as if fully set forth herein.

143.     As set forth above, Steele responded falsely, on behalf of BTS and the other Insureds, to Question 3.(B.)(3.) on the Application by checking the box marked "No," indicating that the Applicant had not experienced within the past year any breach or violation of a material contractual obligation.

144.     As set forth above, Steele falsely stated, on behalf of BTS and the other Insureds, that he was unaware of any pending claims in the Warranty Letter.

145.     Upon information and belief, Steele and each of the Defendants were aware of the Prior Claims at the time of the Application and Warranty Letter and therefore, the statements contained in the Application and Warranty Letter were materially and knowingly false.

146.     At no time after the submission of the Application and the Warranty Letter and prior to the issuance of the Policy did any of the Defendants advise there had been any changes in BTS's submission to Navigators.

4840719v.1

147.    Upon information and belief, the misrepresentations by Steele contained in the Application and the Warranty Letter were knowingly and intentionally made to Navigators, for the purpose of inducing Navigators to issue the Policy or to do so on materially better terms than would be available had the Prior Claims been disclosed.

148.    Navigators had no knowledge of the Prior Claims, or the alleged circumstances or matters which led to them, prior to issuing the Policy.  Accordingly, Navigators reasonably believed the statements contained in the application to be true.

149.    Navigators issued the Policy in reliance on the truth of the representations made by Steele, on behalf of BTS and the other Insureds, in the Application and Warranty Letter.  Had Navigators known of the Prior Claims and attendant circumstances prior to the issuance of the Policy, it would not have issued it or would have issued it on different terms, including a higher premium and/or with specific exclusions.

150.    For the foregoing reasons, Steele and the Insureds concealed or misrepresented a fact in its Application and its Warranty Letter relating to the insurance at issue, that fact was material to the risk and made to Navigators, the fact was concealed or misrepresented by Steele knowingly, willfully, and with intent to deceive Navigators, and Navigators reasonably relied on Steele's statements made or omissions to its detriment.

151.    Accordingly, Navigators is entitled to entry of a judgment declaring that the Policy is void *ab initio* and, therefore, no coverage is afforded for any Loss incurred in connection with the Hancock Action, the Saulsbury Matter, or the S&L Action.

**FOURTH CAUSE OF ACTION**
(Warranty Letter Exclusion – All Defendants)

152.    Navigators repeats, restates and reiterates each and every allegation set forth in Paragraphs 1 through 151 of this Complaint as if fully set forth herein.

153.    As set forth above, Steele, on behalf of BTS and all Insureds, submitted the Warranty Letter to Navigators, stating that he was unaware of any pending claims against anyone for whom the insurance was intended.

154.    The Warranty Letter contains the following language in capitalized letters and bold font (the "Warranty Letter Exclusion"):

**IT IS UNDERSTOOD AND AGREED THAT IF ANY SUCH CLAIMS EXIST THEN THOSE CLAIMS ARE EXCLUDED FROM THE PROPOSED INSURANCE.**

155.    The Warranty Letter is incorporated into and made a part of the Policy.  As such, the Policy excludes coverage for any Claims in existence at the time of the Warranty Letter.

156.    Each of the Prior Claims were in existence at the time of the Warranty Letter. Accordingly, each of the Prior Claims is excluded from coverage under the Policy by the Warranty Letter Exclusion.

157.    Navigators is, therefore, entitled to entry of a judgment declaring that no coverage is afforded under the Policy to any Insured for any Loss incurred in connection with the Hancock Action, the Saulsbury Matter, and/or the S&L Action.

## FIFTH CAUSE OF ACTION
(Policy Representations – All Defendants)

158.    Navigators repeats, restates and reiterates each and every allegation set forth in Paragraphs 1 through 157 of this Complaint as if fully set forth herein.

159.    As set forth above, Steele responded falsely, on behalf of BTS and the other Insureds, to Question 3.(B.)(3.) on the Application by checking the box marked "No," indicating that the Applicant had not experienced within the past year any breach or violation of a material contractual obligation.

160.     As set forth above, Steele falsely stated, on behalf of BTS and the other Insureds, that he was unaware of any pending claims in the Warranty Letter.

161.     Section VIII.F. of the Policy's General Terms and Conditions, as Amended by Endorsement No. 5, provides, in relevant part:

> It is agreed by the **Insureds** that the particulars and statements contained in the **Proposal Form** and any information provided therewith (which shall be on file with the Insurer and be deemed attached hereto as if physically attached hereto) are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy.  It is further agreed by the **Insureds** that the statements in the **Proposal Forms** or in any information provided therewith are their representations, and that this Policy is issued in reliance upon the truth of such representations; provided, in the event that the **Proposal Form** contains misrepresentations made with the actual intent to deceive, or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by Underwriters of this Policy, this Policy shall be void and have no effect whatsoever with respect to those **Insureds** who made or had knowledge of such misrepresentations.

162.     "**Proposal Form**" is defined at Section II.L. of the General Terms and Conditions, in relevant part, as "the application or proposal form attached to and forming part of this Policy, together with any materials submitted therewith."

163.     Upon information and belief, Steele and each of the Defendants were aware of the Prior Claims at the time of the Application and Warranty Letter and therefore, the statements contained in the Application and Warranty Letter were materially and knowingly false.

164.     Upon information and belief, the misrepresentations by or on behalf of Defendants contained in the Application and the Warranty Letter were knowingly and intentionally made to Navigators, for the purpose of inducing Navigators to issue the Policy and to do so on materially better terms than would be available had the Prior Claims been disclosed. Navigators, in fact, relied on these misrepresentations in issuing the Policy under the terms specified.

165.   For the foregoing reasons, the misrepresentations contained in the Application and the Warranty Letter:  (1) were made with an actual intent to deceive; and/or (2) materially affected the acceptance of the risk or the hazard assumed by Navigators.

166.   Accordingly, Navigators is entitled to entry of a judgment declaring that the Policy is void and, therefore, no coverage is afforded for any Loss incurred in connection with the Hancock Action, the Saulsbury Matter, and the S&L Action.

**SIXTH CAUSE OF ACTION**
(Fortuity/Known Loss Doctrine – All Defendants)

167.   Navigators repeats, restates and reiterates each and every allegation set forth in Paragraphs 1 through 166 of this Complaint as if fully set forth herein.

168.   Upon information and belief, Defendants had received and were aware of the Prior Claims before the inception of the Policy and therefore had knowledge of each of them.

169.   As a result of the Prior Claims, Defendants knew or had reason to know, when BTS purchased the Policy, that there was a substantial probability that they would suffer a loss as a result of those Claims.

170.   Defendants have, in fact, suffered the very loss which they knew or had reason to know was substantially probable from the Prior Claims.  In this regard, any loss to Defendants resulting from the Hancock Action, the Saulsbury Matter, and the S&L Action is part and parcel of the loss known to the Insureds at the inception of the Policy.

171.   Navigators had no knowledge of the Prior Claims, or the alleged circumstances or matters which led to those Claims, prior to issuing the Policy.  Accordingly, Navigators did not agree to insure that loss.

172.   For the foregoing reasons, coverage under the Policy for the Hancock Action, the Saulsbury Matter, and the S&L Action is precluded by the fortuity and/or known loss doctrine.

4840719v.1

173.    Accordingly, Navigators is entitled to entry of a judgment declaring that no coverage is afforded under the Policy to any Insured for any Loss incurred in connection with the Hancock Action, the Saulsbury Matter, and the S&L Action.

## SEVENTH CAUSE OF ACTION
(Claim First Made Prior to the Policy's Inception – All Defendants)

174.    Navigators repeats, restates and reiterates each and every allegation set forth in paragraphs 1 through 173 of this Complaint as if fully set forth herein.

175.    "**Claim**" is defined at Section II.A. of the General Terms and Conditions, as amended by Endorsement No. 5, in relevant part, as "a written demand for monetary or non-monetary relief made against any **Insured**" and "a civil … or arbitration proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading."

176.    Section VII.B. of the General Terms and Conditions further provides:

> All **Claims** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** will be considered a single **Claim**, and will be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage.

177.    "**Related Wrongful Acts**" is defined at Section II.M. of the General Terms and Conditions as "**Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, event or decision."

178.    The Hancock Action is "a civil … proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading."  It was commenced against KPE on or about August 24, 2018 with the filing of the Hancock Original Petition.  Thus, the Hancock Action is a Claim first made prior to the Policy's inception on March 31, 2019.

179.    The Hancock Amended Petition, filed on July 25, 2019, arises from precisely the same circumstances, namely KPE's breach of its contract to pay Hancock for $2,548,589.09 in materials and services furnished by Hancock pursuant to three purchase order contracts.

180.    All of the claims asserted by Hancock in the Hancock Amended Petition, including those asserted against Koch and Steele, flow directly from that breach and, therefore, involve the same Wrongful Acts or Related Wrongful Acts to those asserted in the Hancock Original Petition.

181.    The Saulsbury Liens, filed November 11, 2018 and December 13, 2018, are each a "written demand for monetary … relief made against [an] **Insured**," KPE, which seek payment of $22,043,435.20 due to Saulsbury for its work on the Channelview Project.   Thus, the Saulsbury Liens are each a Claim first made prior to the Policy's inception on March 31, 2019.

182.    The Saulsbury Demand is an "arbitration proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading."

183.    Further, the Wrongful Acts alleged in the Saulsbury Demand, KPE's nonpayment of $22,043,435.20 due to Saulsbury for its work on the Channelview Project, constitute the same Wrongful Acts or Related Wrongful Acts to those asserted by the Saulsbury Liens.

184.    The S&L Lien, filed February 26, 2019, is a "written demand for monetary … relief made against [an] **Insured**," KPE, which seeks payment of $521,521.50 due to S&L for its work on the Channelview Project.   Thus, the S&L Lien is a Claim first made prior to the Policy's inception on March 31, 2019.

4840719v.1

185.    The S&L Action is "a civil … proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading."

186.    Further, the Wrongful Acts alleged in the S&L Action, KPE's nonpayment of $521,521.50 due to S&L for its work on the Channelview Project, would constitute the same Wrongful Acts or Related Wrongful Acts to those asserted by the S&L Lien.

187.    For the foregoing reasons, the Hancock Action, Saulsbury Matter, and S&L Action are each a Claim first made prior to the Policy Period.  Accordingly, coverage is not triggered under the Policy's D&O Coverage.

188.    Navigators is therefore entitled to entry of a judgment declaring that no coverage is afforded under the Policy to any Insured for any Loss incurred in connection with the Hancock Action, Saulsbury Matter, or S&L Action.

### EIGHTH CAUSE OF ACTION
(Contract Exclusion – KPE and Koch)

189.    Navigators repeats, restates and reiterates each and every allegation set forth in paragraphs 1 through 188 of this Complaint as if fully set forth herein.

190.    Section III.B.1. of the D&O Coverage (the "Contract Exclusion") precludes coverage for the Company under Insuring Agreement C for:

> **Loss**, including **Costs of Defense**, in connection with any **Claim** made against the **Company** . . . based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any liability under any contract or agreement; provided, however, that this exclusion will not apply to the extent the **Company** would have been liable in the absence of such contract or agreement.

191.    In the Hancock Amended Petition, Hancock alleges that "KPE has failed to pay Hancock $2,548,589.09 for labor, materials, and machinery Hancock provided to KPE for Targa

[Pipeline]'s Johnson Project through June 26, 2018." All of the labor, materials, and machinery were furnished by Hancock pursuant to the three contracts.

192.   In the Saulsbury Demand, Saulsbury alleges that "KPE is liable to Saulsbury in the amount of approximately $22,043,435.20, for the reasonable value of the labor and materials Saulsbury furnished to KPE on the [Channelview] Project." All of the labor and materials furnished by Saulsbury on the Channelview Project were a direct result of its Subcontract with KPE.

193.   For the foregoing reasons, the Contract Exclusion is an additional provision that bars coverage for KPE and Koch in the Hancock Action, and for KPE in the Saulsbury Matter, each of which arises out of alleged liability under contract.

194.   Navigators is therefore entitled to entry of a judgment declaring that no coverage is afforded under the Policy to KPE for any Loss incurred in connection with the Hancock Action or Saulsbury Matter, and that no coverage is afforded under the Policy to Koch for any Loss incurred in connection with the Hancock Action.

## NINTH CAUSE OF ACTION
(Gaining of Profit or Deliberate Fraudulent or Criminal Acts Exclusion – All Defendants)

195.   Navigators repeats, restates and reiterates each and every allegation set forth in paragraphs 1 through 194 of this Complaint as if fully set forth herein.

196.   Section III.A.1. of the D&O Coverage, as amended by Endorsement No. 5, precludes coverage for, in relevant part:

**Loss**, including **Costs of Defense**, in connection with any **Claim** made against any **Insured** … brought about or contributed to by:

a.   the gaining by any **Insured** of any profit, advantage or remuneration to which such **Insured** was not legally entitled; or

b.   the deliberately fraudulent or criminal acts of any **Insured**;

provided, however: (1) this exclusion shall only apply if it is finally adjudicated such conduct in fact occurred; [and] (ii) this exclusion shall not apply to coverage provided under Insuring Agreement B; …

For the purpose of this exclusion, the phrase "finally adjudicated" or "final adjudication" shall only apply if it is finally adjudicated, or there is a final adjudication, in the underling action that such conduct in fact occurred, and that such adjudication is non-appealable.

197.    To the extent that a final adjudication determines that any Insureds gained a profit to which it was not legally entitled or engaged in deliberately fraudulent or criminal acts, this exclusion would bar coverage for the claims asserted in the Hancock Action, the Saulsbury Matter, and S&L Action.

198.    In such event, Navigators would be entitled to entry of a judgment declaring that no coverage is afforded under the D&O Coverage to any Insured engaging is such conduct for any Loss incurred in connection with the Hancock Action, the Saulsbury Matter, and S&L Action.

### TENTH CAUSE OF ACTION
(Definition of Loss – All Defendants)

199.    Navigators repeats, restates and reiterates each and every allegation set forth in paragraphs 1 through 198 of this Complaint as if fully set forth herein.

200.    The definition of "**Loss**" at Section II.J. of the Policy's General Terms and Conditions also specifically excludes "criminal or civil fines or penalties imposed by law, … or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed."

201.    Coverage under the Policy would be precluded to the extent that the Hancock Action, Saulsbury Matter, and S&L Action seek fines, penalties, punitive or exemplary damages, or disgorgement, as coverage for the aforementioned is barred by the Policy's terms and/or public policy.

4840719v.1

## ELEVENTH CAUSE OF ACTION
(Prior Notice Exclusion – All Defendants)

202.    Navigators repeats, restates and reiterates each and every allegation set forth in paragraphs 1 through 201 of this Complaint as if fully set forth herein.

203.    Section III.A.2. of the D&O Coverage precludes coverage for:

**Loss**, including **Costs of Defense**, in connection with any **Claim** made against the **Insured** . . . based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given under any other policy of which this Coverage Part is a renewal or replacement.

(*Id.*, D&O Coverage, § III.A.2.).

204.    To the extent that it is revealed in discovery that the Hancock Action, Saulsbury Matter, and/or S&L Action arises out of any fact, circumstance or situation which has been the subject of any notice given under any other policy of which the Policy's D&O Coverage is a replacement, coverage would be precluded under the foregoing exclusion.

205.    In such event, Navigators would be entitled to entry of a judgment declaring that no coverage is afforded under the D&O Coverage to any Insured for any Loss incurred in connection with the Hancock Action, the Saulsbury Matter, and/or S&L Action.

**WHEREFORE,** in light of the foregoing, Plaintiff Navigators Insurance Company respectfully submits that judgment should be entered as follows:

a.    on the First Cause of Action, declaring the Policy void *ab initio* and rescinding the Policy in its entirety;

b.    on the Second Cause of Action, declaring the Policy void *ab initio* and rescinding the Policy in its entirety;

c.    on the Third Cause of Action, declaring that the Policy is void *ab initio* and, therefore, that Navigators has no coverage obligations for the Hancock Action, the Saulsbury Matter, and/or the S&L Action under the Policy;

d.  on the Fourth Cause of Action, declaring that Navigators has no coverage obligations for the Hancock Action, the Saulsbury Matter, and/or the S&L Action under the Policy;

e.  on the Fifth Cause of Action, declaring that the Policy is void and, therefore, that Navigators has no coverage obligations for the Hancock Action, the Saulsbury Matter, and/or the S&L Action under the Policy;

f.  on the Sixth Cause of Action, declaring that Navigators has no coverage obligations for the Hancock Action, the Saulsbury Matter, and/or the S&L Action under the Policy;

g.  on the Seventh Cause of Action, declaring that Navigators has no coverage obligations for the Hancock Action, the Saulsbury Matter, and/or the S&L Action under the Policy;

h.  on the Eighth Cause of Action, declaring that Navigators has no coverage obligations as concerns KPE and Koch for the Hancock Action and/or the Saulsbury Matter under the Policy;

i.  on the Ninth Cause of Action, declaring that Navigators has no coverage obligations for the Hancock Action, the Saulsbury Matter, and/or the S&L Action under the Policy;

j.  on the Tenth Cause of Action, declaring that Navigators has no coverage obligations for the Hancock Action, the Saulsbury Matter, and/or the S&L Action under the Policy;

k.  on the Eleventh Cause of Action, declaring that Navigators has no coverage obligations for the Hancock Action, the Saulsbury Matter, and/or the S&L Action under the Policy; and

l.  for such other and further relief, including an award of costs, as may be just and proper.

Respectfully submitted,

By: */s/ Thomas M. Spitaletto*
Thomas M. Spitaletto
Texas State Bar No.:   00794679
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
901 Main Street, Suite 4800
Dallas, TX 75202
Tel.  (214) 698-8000
Fax.  (214) 698-1101
(thomas.spitaletto@wilsonelser.com)

*Of Counsel*

David S. Sheiffer
Richard W. Boone Jr.
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
150 E. 42nd Street
New York, NY 10017
Tel.  (212) 490-3000
Fax.  (212) 490-3038
(david.sheiffer@wilsonelser.com)
(richard.boone@wilsonelser.com)

COUNSEL FOR PLAINTIFF,
NAVIGATORS INSURANCE COMPANY

4840719v.1