# Exhibit 20



WILSON ELSER
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

Certified Article Number
9414 7266 9904 2151 2704 05
SENDER'S RECORD

September 20, 2019

Richard W. Boone Jr.
(212) 915-5972 (direct)
(212) 490-3000 (main)
Richard.Boone@wilsonelser.com

**VIA CERTIFIED MAIL & EMAIL**
**RETURN RECEIPT REQUESTED**

Walter J. Andrews
Hunton Andrews Kurth LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
(E-mail: wandrews@HuntonAK.com)

| **Re:** | **Insured** | **:** | **BTS Enterprises, Inc.** |
|---|---|---|---|
| | **Matter** | **:** | ***Hancock Mechanical, LLC d/b/a Hancock Mechanical Welding & Fabrication v KP Engineering, LP, et al.*, Case No. CV54856 (Tex. Dist. Ct., Midland County)** |
| | **Policy No.** | **:** | **CH19DOLZ01RPHIV** |
| | **Claim No.** | **:** | **DOL325031** |
| | **Our File No.** | **:** | **15597.00144** |

Dear Mr. Andrews:

Our firm has been retained to represent the interests of Navigators Insurance Company ("Navigators") with respect to the above-referenced matter (the "Hancock Action"). We are directing this letter to you as the authorized representative of the KP Engineering, LP ("KPE"), KP Engineering, LLC f/k/a Koch Partners, LLC ("Koch"), and Brandon Steele ("Steele") (collectively the "Insureds"), as regards this matter. If there is another person to whom we should direct future correspondence, we ask that you kindly advise us and forward this letter accordingly.

We write in response to your August 19, 2019 letter regarding coverage for the Hancock Action under the above-referenced policy (the "Policy"). Navigators has conducted a good faith review of its coverage position in light of the contentions set forth in your letter and the other materials submitted by the Insureds to date. Based on that review, Navigators is constrained to advise that coverage is unavailable for this matter for the reasons set forth below. Accordingly, the Policy does not afford coverage for any Loss incurred by the Insureds in connection with the Hancock Action, including Costs of Defense.

Please note that Navigators' present position regarding coverage for this matter is necessarily based on the information available to Navigators at this time. Navigators lends no credibility to any allegations raised in connection with this matter and notes that they are discussed herein purely for your guidance regarding the Policy's operation. If there is additional information that may impact favorably upon coverage, please feel free to submit this for Navigators' consideration.

150 East 42nd Street • New York, NY 10017 • p 212.490.3000 • f 212.490.3038

Albany • Baltimore • Boston • Chicago • Connecticut • Dallas • Denver • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean
Miami • Milwaukee • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Washington, DC • West Palm Beach • White Plains
Affiliates Berlin • Cologne • Frankfurt • Munich • Paris

wilsonelser.com

10144583v.1



Any discussion contained herein is not intended to be exhaustive or exclusive. Navigators reserves the right to supplement or amend its coverage position as additional facts become known. Additionally, we note that this letter is intended to supplement and not replace any prior correspondence from Navigators regarding coverage for this matter or any related matter, which we hereby adopt and incorporate as if fully set forth herein.

## FACTUAL BACKGROUND

In August 2017, Targa Pipeline Mid-Continent WestTex LLC ("Targa") contracted with KP Engineering, LP ("KPE") to construct the "Johnson Project," a cryogenic gas processing and compression unit with various pipelines in Reagan County and Midland County, Texas. In March, April, and May 2018, KPE entered into three purchase order contracts with Hancock Mechanical Welding & Fabrication ("Hancock") to furnish labor, materials, and equipment for the mechanical portion of the Johnson Project. Hancock commenced work on the Johnson Project in March of 2018 and was paid $695,143.30 by KPE for the first five weeks. However, in May 2018, KPE allegedly stopped paying Hancock and now owes $2,548,589.09 for services and materials furnished through June 26, 2018.

On August 24, 2018, Hancock brought suit against KPE and Targa in the District Court for Midland County, Texas, Case No. CV54856 (the "Hancock Action"). The Original Petition filed by Plaintiffs in the Hancock Action asserts that "[b]ecause neither KPE nor Targa has committed to pay Hancock for its services, Hancock has no choice but to bring this suit against KPE and Targa to be paid for its work." In addition, the Petition notes that "[b]ecause Hancock remains unpaid for its work on the Johnson Project, it has filed liens in Reagan and Midland Counties on the Project Property under Chapter 56 of the Texas Property Code and, in the alternative, Chapter 53 of the Texas Property Code."

The Original Petition asserted eight causes of action, six against KPE for breach of contract, suit on sworn account, quantum meruit, restitution, breach of fiduciary duty/trust fund violations, and Prompt Pay Act violations, and two against Targa for foreclosure of the mineral lien and foreclosure of the mechanics and materialman's lien. Hancock sought an award of $2,548,589.09 in actual damages, interest as a penalty, and exemplary damages against KPE, and reasonable attorneys' fees and expenses, pre- and post-judgment interest, and court costs against KPE and Targa. In the alternative, Hancock sought foreclosure and sale of Targa's interest in the property in satisfaction of the debt.

On July 25, 2019, Hancock filed the operative First Amended Petition (the "Amended Petition"), adding KP Engineering, LLC f/k/a Koch Partners, LLC ("Koch"), and Brandon Steele ("Steele") as defendants. The Amended Petition asserts that "[b]ecause neither KPE nor Targa has paid Hancock for its services, and Hancock has reason to believe that Brandon Steele, owner and general partner of KPE, improperly diverted funds Targa paid KPE for the benefit of Hancock to other ventures, Hancock has no choice but to bring this suit against KPE, Steele, as general partner of KPE and in his individual capacity, Koch, another general partner of KPE, and Targa to be paid for its work." Thus, like the Original Petition, the Amended Petition arises out of KPE's failure to pay Hancock under the three purchase order contracts.



The Amended Petition includes eleven causes of action, six against KPE, Koch, and Steele for breach of contract, suit on sworn account, breach of fiduciary duty/trust fund violations, Prompt Pay Act violations, negligence, and fraud, three against Targa for foreclosure of the mineral lien, foreclosure of the mechanics and materialman's lien, and fund-trapping violations, and two against KPE, Koch, Steele, and Targa for quantum meruit and unjust enrichment/restitution. Hancock seeks an award of $2,548,589.09 in actual damages, interest as a penalty, and exemplary damages against KPE, Steele, and Koch, and reasonable attorneys' fees and expenses, pre- and post-judgment interest, and court costs against all defendants. In the alternative, Hancock seeks foreclosure and sale of Targa's interest in the property in satisfaction of the debt and a constructive trust on any property or interest which Steele purchased with funds fraudulently diverted from the Johnson Project subcontractors.

In early 2019, with the Hancock Action pending, BTS Enterprises, Inc. ("BTS"), the parent company of KPE and Koch, sought insurance from Navigators on behalf of itself and its subsidiaries, including KPE and Koch. In connection therewith, BTS submitted an "Arch Renewal Application" (the "Application") to Navigators which included the question: "Has the Applicant experienced within the past year, or does it expect to experience in the next year, any … [b]reach or violation of any debt covenant, loan agreement, or other material contractual obligation." The term "Applicant" is defined in the Application to include, in relevant part, "the company to be named in the policy and any subsidiary." BTS responded "No" to the question.

In addition, BTS submitted a letter titled "No Claims Declaration" (the "Warranty Letter"), which states:

> As respects the Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability, Employed Lawyers and Crime insurance policy offerings proposed by Navigators, I am unaware of any pending claims against anyone for whom this insurance is intended which may fall within the scope of coverage afforded by any similar insurance presently or previously in effect or currently proposed.
>
> **IT IS UNDERSTOOD AND AGREED THAT IF ANY SUCH CLAIMS EXIST THEN THOSE CLAIMS ARE EXCLUDED FROM THE PROPOSED INSURANCE.**
>
> **SUCH MATTERS MAY ALSO RESULT IN THE NAVIGATORS OFFERINGS BEING ALTERED OR RESCINDED.**

(Emphasis in original). Navigators issued the Policy in reliance on the Application and Warranty Letter, which were both signed by Steele.

On July 31, 2019, you provided notice on behalf of KPE, Koch, and Steele to Navigators of the Amended Petition, seeking coverage under the Policy. Your letter further advised that KPE and Koch had retained James W. Bowen of Hunton Andrews Kurth LLP and Steele had retained William K. Andrews of Andrews Myers as defense counsel in the Hancock Action. On August 15, 2019, Navigators had a telephone conversation with you in which Navigators raised several issues regarding coverage under the Policy.

In response, you issued a letter to Navigators, dated August 19, 2019, setting forth several reasons that the Insureds believe that coverage is available under the Policy for the Hancock Action. Your letter acknowledges that the Original Petition was filed against KPE on August 24, 2018, but argues that coverage is nonetheless available because "the Claimant's Amended Petition constitutes the first Claim that triggers coverage under the Policy." Your letter further argues that "even if the Insureds' notice of the Claim was untimely, although the Insureds maintain it was not, Navigators has not met its burden of proving a breach sufficient to obviate its duty to defend."

By letter dated August 27, 2019, Navigators received notice that, on August 23, 2019, KPE and Koch filed a Voluntary Petition for Bankruptcy under Chapter 11 in the Southern District of Texas. Navigators has not received notice that this filing has precluded the Insured from indemnifying Steele for Costs of Defense incurred in the Hancock Action. Accordingly, Navigators presumes that is still the case.

If we have misstated or misunderstood any of the foregoing, we ask that you please let us know as soon as possible.

**COVERAGE DISCUSSION**

Navigators issued SmartPolicy No. CH19DOLZ01RPHIV to BTS Enterprises, Inc. ("BTS") for the Policy Period of March 31, 2009 to March 31, 2020 ("Policy"). As is potentially relevant here, the Policy includes a Directors and Officers Liability Coverage Part ("D&O Coverage"), which is subject to a $5,000,000 limit of liability and a $25,000 self-insured retention.

Subject to all applicable terms, conditions, limitations, and exclusions, the Insuring Agreements at Section I. of the Policy's D&O Coverage Section provides, in relevant part:

> B. The Insurer will pay to or on behalf of the **Company** all **Loss** which the **Insured Persons** are legally obligated to pay as a result of a **Claim** first made against the **Insured Persons** during the **Policy Period** or the Discovery Period, if purchased, for a **Wrongful Act** by the **Insured Persons**, but only to the extent the **Company** is required or permitted by law to pay such **Loss** to or on behalf of the **Insured Persons** as advancement or indemnification.
>
> C. . . . [T]he Insurer will pay to or on behalf of the **Company** all **Loss** which the **Company** is legally obligated to pay as a result of a **Claim** first made against it during the **Policy Period** or the Discovery Period, if purchased, for a **Wrongful Act** by the **Company**.

"**Insured Persons**" is defined at Section II.E. of the D&O Coverage, in relevant part, as "any past, present or future duly elected or appointed director, officer or member of the board of managers or management committee of the **Company**." "**Company**" is defined at Section II.B of the Policy's General Terms and Conditions, as amended by Endorsement No. 5, Section II.C of the General Terms and Conditions, and Item 1 of the Declarations, as BTS and "any **Subsidiary**." "**Subsidiary**" is defined at Section II.N. of the Policy's General Terms and Conditions, in relevant part, as "any entity during any time in which [BTS] owns, directly or indirectly, more than fifty percent (50%) of the outstanding securities or interests representing the present right to vote for



the election or appointment of such entity's directors, managers, or persons occupying an equivalent position." "**Claim**" is defined at Section II.A. of the General Terms and Conditions, as amended by Endorsement No. 5, in relevant part, as "a civil ... proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading.

From the information previously provided, it appears that KPE and Koch are each a Subsidiary of BTS and that Steele is an Insured Person as regards each entity. In addition, Navigators understands that Steele is being indemnified for Costs of Defense incurred in connection with the Hancock Action. Accordingly, it appears that this matter would constitute a Claim against an Insured Person or the Company, to which Insuring Agreements B and C potentially apply. However, coverage is not triggered under either Insuring Agreement because the Hancock Action is not a Claim first made against any Insured during the Policy Period. In this regard, Section VII.B. of the General Terms and Conditions provides:

> All **Claims** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** will be considered a single **Claim**, and will be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage.

"**Wrongful Act**" is defined at Section II.J. of the D&O Coverage, in relevant part, as "any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by any **Insured Person** in his or her capacity as such with the **Company**" and "with respect only to coverage under INSURING AGREEMENT C ... any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the **Company**." "**Related Wrongful Acts**" is defined at Section II.M. of the General Terms and Conditions as "**Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, event or decision."

The Hancock Action was commenced against KPE on or about August 24, 2018 with the filing of the Original Petition. Thus, it is a Claim first made prior to the Policy's inception on March 31, 2019. The Amended Petition, filed on July 25, 2019, arises from precisely the same circumstances, namely KPE's breach of its contract to pay Hancock for $2,548,589.09 in materials and services furnished by Hancock pursuant to three purchase order contracts. All of the claims asserted by Hancock in the Amended Petition, including those asserted against Koch and Steele, flow directly from that breach. Accordingly, the Wrongful Acts alleged in the Amended Petition constitute Related Wrongful Acts to those alleged in the Original Petition. Thus, the Hancock Action is a Claim first made prior to the Policy Period, and coverage is not triggered under the Policy's D&O Coverage.

Even if this were not the case, coverage would be precluded for any Loss or Claim in existence at the inception of the Policy. The fortuity doctrine bars coverage for the Hancock Action because the Loss at issue in that action was already known to the Insured when it purchased the Policy. Fortuity is an inherent requirement of all risk insurance policies. The "known loss" doctrine is a component of the fortuity doctrine, which precludes coverage for loss the insured



knew had occurred at the time it purchased the policy. The Hancock Action would plainly constitute a "known loss," for which insurance coverage is precluded as a matter of law.

In addition, prior to the issuance of the Policy, BTS submitted a letter to Navigators titled "No Claims Declaration" (the "Warranty Letter") which states that BTS is "unaware of any pending claims against anyone for whom this insurance is intended which may fall within the scope of coverage afforded by any similar insurance presently or previously in effect or currently proposed." The Warranty Letter further provides that **"IT IS UNDERSTOOD AND AGREED THAT IF ANY SUCH CLAIMS EXIST THEN THOSE CLAIMS ARE EXCLUDED FROM THE PROPOSED INSURANCE"** and that **"SUCH MATTERS MAY ALSO RESULT IN THE NAVIGATORS OFFERINGS BEING ALTERED OR RESCINDED."**

Section VIII.F. of the Policy's General Terms and Conditions, as Amended by Endorsement No. 5, provides, in relevant part:

> It is agreed by the **Insureds** that the particulars and statements contained in the **Proposal Form** and any information provided therewith (which shall be on file with the Insurer and be deemed attached hereto as if physically attached hereto) are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the **Insureds** that the statements in the **Proposal Forms** or in any information provided therewith are their representations, and that this Policy is issued in reliance upon the truth of such representations; provided, in the event that the **Proposal Form** contains misrepresentations made with the actual intent to deceive, or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by Underwriters of this Policy, this Policy shall be void and have no effect whatsoever with respect to those **Insureds** who made or had knowledge of such misrepresentations.

"**Proposal Form**" is defined at Section II.L. of the General Terms and Conditions, in relevant part, as "the application or proposal form attached to and forming part of this Policy, together with any materials submitted therewith." Accordingly, by incorporation of the Warranty Letter, the Policy precludes coverage for Claims in existence at the time of the letter, including the Hancock Action.

Coverage is further unavailable for KPE and Koch by operation Section III.B.1. of the D&O Coverage (the "Contract Exclusion"), which precludes coverage for the Company under Insuring Agreement C for:

> **Loss**, including **Costs of Defense**, in connection with any **Claim** made against the **Company** . . . based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any liability under any contract or agreement; provided, however, that this exclusion will not apply to the extent the **Company** would have been liable in the absence of such contract or agreement.

By its terms, the Contract Exclusion bars coverage for any Loss "arising out of" any liability under contract. Under Texas law, the Loss need only bear an incidental relationship to the contract for the exclusion to apply. The claims asserted against the Insureds in the Hancock Action are more than incidental to the three purchase order contracts between Hancock and KPE;



they could not exist but for those contracts. In the Amended Petition, Hancock states that it "has no choice but to bring this suit against KPE, Steele, as general partner of KPE and in his individual capacity, Koch, another general partner of KPE, and Targa to be paid for its work." Hancock alleges that "KPE has failed to pay Hancock $2,548,589.09 for labor, materials, and machinery Hancock provided to KPE for Targa's Johnson Project through June 26, 2018." All of the labor, materials, and machinery were furnished by Hancock pursuant to the three contracts. Accordingly, the Contract Exclusion bars coverage for the Hancock Action, which arises out of KPE's alleged liability under the Hancock contracts.

For the foregoing reasons, Navigators is constrained to advise the coverage is unavailable under the Policy for the Hancock Action. In so doing, for your further guidance, Navigators notes a number of additional Policy terms and other matters which may further bar or limit the coverage available under the Policy for this Claim.

Section III.A.2. of the D&O Coverage precludes coverage for:

> **Loss**, including **Costs of Defense**, in connection with any **Claim** made against the **Insured** . . . based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given under any other policy of which this Coverage Part if a renewal or replacement.

In the event KPE provided notice to its prior insurer of the Original Petition, coverage would be unavailable for the Hancock Action under the Policy, including for any additional claims asserted in the Amended Petition.

Section III.A.1. of the D&O Coverage, as amended by Endorsement No. 5, in relevant part, precludes coverage for:

> **Loss**, including **Costs of Defense**, in connection with any **Claim** made against any **Insured** ... brought about or contributed to by:
>
> a. the gaining by any **Insured** of any profit, advantage or remuneration to which such **Insured** was not legally entitled; or
>
> 1.
>
> b. the deliberately fraudulent or criminal acts of any **Insured**;
>
> provided, however: (1) this exclusion shall only apply if it is finally adjudicated such conduct in fact occurred; [and] (ii) this exclusion shall not apply to coverage provided under Insuring Agreement B; ...
>
> For the purpose of this exclusion, the phrase "finally adjudicated" or "final adjudication" shall only apply if it is finally adjudicated, or there is a final adjudication, in the underling action that such conduct in fact occurred, and that such adjudication is non-appealable.



To the extent that a final adjudication determines that the Insured gained a profit to which it was not legally entitled or engaged in deliberately fraudulent or criminal acts, this exclusion would bar coverage for the claims asserted against KPE and Koch in the Hancock Action.

The definition of "**Loss**" at Section II.J. of the Policy's General Terms and Conditions excludes "criminal or civil fines or penalties imposed by law, ... or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed." In addition to Hancock's alleged damages, the Amended Petition seeks "interest as a penalty." Such penalties would not constitute a covered Loss under the Policy's definition of Loss. Hancock also seeks disgorgement of funds alleged to have wrongfully retained by the Insureds and exemplary damages. Under Texas law, disgorgement and punitive damages are uninsurable as a matter of law.

Navigators necessarily must reserve all rights regarding the foregoing matters and any other terms, conditions, limitations, or exclusions in the Policy which may hereafter be deemed to apply. In addition, Navigators must bring to the Insured's attention certain apparent misrepresentations in the Application materials submitted to Navigators, which may void the Policy.

The Insureds concede that they had had knowledge of the Hancock Action well prior to the issuance of the Policy. The Hancock Action was filed on August 24, 2018. However, in early 2019 when BTS sought to obtain coverage on behalf of the Insureds, it failed to disclose the matter to Navigators. In addition to the Warranty Letter, as discussed above, BTS submitted the Application, in which BTS responded "No" to the question: "Has the Applicant experienced within the past year, or does it expect to experience in the next year, any ... [b]reach or violation of any debt covenant, loan agreement, or other material contractual obligation." The term "Applicant" is defined in the Application to include, in relevant part, "the company to be named in the policy and any subsidiary." The Application is specifically attached to and made a part of the Policy by Endorsement No. 4, which refers to "Arch Renewal Application Signed and Dated April 1, 2019."

Both the Application and Warranty Letter were signed by Steele, the President of KPE and sole Manager of Koch. Both were also plainly material to the risk to be insured under the Policy and Navigators issued the Policy in reliance on the information contained therein. Because the Hancock Action was pending at the time these materials were submitted to Navigators, it appears that the aforementioned representations were knowingly false. If so, pursuant to Section VIII.F. of the Policy's General Terms and Conditions, the Policy is void as regards the Insureds, who made or had knowledge of those misrepresentations. Accordingly, this letter is intended to serve as notice pursuant to Section 705.005 of the Texas Insurance Code of Navigators' defense based on the Insured's misrepresentations. Further, Navigators reserves the right to seek a judicial determination regarding the validity of the Policy.

Finally, Navigators notes that, by letter dated August 16, 2019, it received notice of a Demand for Arbitration by Saulsbury Industries, Inc., filed against KPE with the American Arbitration Association on August 14, 2019 (the "Saulsbury Matter"). By letter dated September 12, 2019, Navigators also received notice of a lawsuit, captioned *Smith & Loveless, Inc. v. Steele et al*, Case No. 2019-61414 (Tex. Dist. Ct., Harris Cnty.), filed against certain officers and/or



directors of KPE on August 29, 2019 (the "S&L Action"). Based on the facts presently known, it does not appear that either matter is related to the Hancock Action. Accordingly, Navigators will respond to those matters separately. However, by necessity, Navigators must reserve all rights in the event it is determined that the Saulsbury Matter and/or S&L Action involve Related Wrongful Acts to those alleged in the Hancock Action.

Please again note that the foregoing discussion is based on presently known facts and is not intended to be exhaustive or exclusive. Navigators continues to reserve all rights, as it has done from the outset, including the right to deny coverage on these and any other basis which may hereinafter be deemed applicable.

**RESERVATION OF RIGHTS**

In light of the foregoing, Navigators is constrained to advise that coverage is unavailable under the Policy for the Hancock Action. By necessity, Navigators otherwise continues to reserve all rights, privileges and defenses under the Policy, at law, and in equity, to deny or limit coverage on any of the previously stated or other bases. Further, no action taken by Navigators or this firm should be deemed a waiver of or estoppel of Navigators' rights under the Policy or otherwise. Navigators' position as to coverage for this matter is based on the presently known facts and Navigators may supplement or amend its position as additional information becomes available. Of course, Navigators also considers all rights mutually reserved in favor of the Insureds.

As always, if there is any additional information which the Insureds believe may favorably impact coverage, we welcome you to bring such information to our attention at this time. Should you have any questions or comments with respect to the content of this letter or otherwise, please do not hesitate to contact me at your convenience.

Very truly yours,

Wilson Elser Moskowitz Edelman & Dicker LLP

Richard W. Boone Jr.

cc: Arthur Del Principe, Navigators
(via email: ADelPrincipe@navg.com)

David S. Sheiffer, Wilson Elser
(via email: david.sheiffer@wilsonelser.com)

10144583v.1